UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOLITA M. THOMPSON,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____/

No. C 08-3449 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lolita M. Thompson ("Thompson") seeks judicial review of the decision by the Social Security Commissioner ("Commissioner") denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment and Thompson's alternative motion to remand. Having read the parties' papers and the administrative record, and having carefully considered their arguments and relevant legal authority, the court hereby DENIES Thompson's motion, GRANTS the Commissioner's motion, and AFFIRMS the decision of the administrative law judge ("the ALJ").

**BACKGROUND**

Thompson filed an application for supplemental security income ("SSI") benefits on July 26, 2004. A.T. 59. She alleged disability beginning April 26, 2003. A.T. 59. The Commissioner denied that application initially on April 8, 2005, and on reconsideration on June 13, 2005. A.T. 28, 34. Thompson filed a request for hearing on June 21, 2005. A.T. 39. A hearing was subsequently held before Administrative Law Judge Steven B. Berlin on December 7, 2006. A.T. 228. The ALJ rendered an unfavorable decision on September

27, 2007, finding Thompson "not disabled" within the meaning of the Social Security Act. A.T. 21. Thompson then requested review by the Appeals Council on November 21, 2007. A.T. 9. The Appeals Council denied the request for review on May 30, 2008. A.T. 4. On July 17, 2008, Thompson brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's hearing, Thompson was thirty-five years old and had attended college and four years of vocational training to become a registered dental assistant. A.T. 234-235. She has no relevant past work experience. Thompson alleges physical impairments resulting from twice breaking her left ankle and liver damage. A.T. 76, 239.

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to people who have contributed to the social security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(i). If not, at the second step the ALJ must consider whether the claimant suffers from a severe physical or mental impairment or combination of impairments that lasted or can be expected to last for a continuous 12 month period. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. The third step requires the ALJ to compare the claimant's impairment to a listing of impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is

awarded benefits. See 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work despite the limitations caused by the impairment. See 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform her past work, the Commissioner is required to show, at step five, that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and past work experience. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in her previous occupation. Andrews v. Shalala, 52 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. Id.

**ALJ'S FINDINGS**

The ALJ determined that Thompson was not disabled at step five of the disability evaluation. A.T. 21. At step one, the ALJ concluded that Thompson had not engaged in substantial gainful employment activity since July 26, 2004. A.T. 14. At step two, the ALJ found that Thompson suffered from the following severe impairments: "status post fracture of left ankle with open reduction and internal fixation with residual traumatic arthritis; osteoporosis (ankle); polysubstance use disorder; and malingering." A.T. 14. The ALJ determined that Thompson's earlier ankle fracture, prior incident of acute liver failure, and healed leg burns were not severe impairments. A.T. 14. At step three, the ALJ found that Thompson's physical impairments did not meet the requirements for Listing §§ 1.02, 1.03, and 1.06. A.T. 15. The ALJ noted no objective evidence demonstrating that Thompson's ankle injury prevented her from walking about for a continuous twelve month period. A.T. 15. The ALJ additionally determined that Thompson's mental impairment did not satisfy

Listing § 12.09.  A.T. 15.

Having found that Thompson did not suffer from a listed impairment, the ALJ examined the medical record to assess her RFC prior to advancing to step four.  A.T. 15. The ALJ first considered physical limitations.  The evidence indicated that Thompson fractured her ankle in April 2003 and suffered a subsequent fracture in October of that year. A.T. 16.  May 2004 x-rays showed the initial fractures healed, early healing of the second fracture, a broken-off screw in her ankle's soft tissue, and disuse osteoporosis.  A.T. 16.  X-rays in March 2005 showed the fractures healed with a likely residual gap.  A.T. 16.

The ALJ looked at the findings of Dr. Henry Mally, Thompson's primary care physician.  A.T. 17.  In a letter dated July 25, 2005, Dr. Mally stated that Thompson had been disabled for employment purposes for the past three years and he expected her to remain disabled for another year.  A.T. 19.  Dr. Mally also examined Thompson in November 2006 and noted a contusion and swelling of her left leg.  A.T. 17.  He reported that Thompson was limited in an eight-hour workday to standing or walking one hour, sitting no more than one hour at a time for four hours total, and lying down for two hours, anticipating that after three months she would be able to sit, stand, and walk for longer periods of time.  A.T. 17.

The ALJ also assessed the findings of Dr. Calvin Pon, who in December 2004 conducted an orthopedic examination of Thompson.  A.T. 17.  Thompson wore a controlled alignment method ("CAM") walking boot to the exam during which Dr. Pon found Thompson's gait to be stable, her gait velocity and stride length less than normal, a limited range of motion in her left ankle, and atrophy of her left calf.  A.T. 17.  He concluded that Thompson was limited to standing and walking four hours and sitting six hours in an eight-hour workday, lifting 10 pounds frequently and 25 pounds occasionally, and only occasionally pushing with her left foot in a CAM boot.  A.T. 17.  Dr. Amit Rajguru conducted an internal medicine consultative exam of Thompson in March 2005, concluding that she could sit for six hours and stand and walk for two hours of an eight-hour workday consistent

4

with light work.  A.T. 17, 180.

The ALJ noted that Thompson also sought medical treatment in December 2004 after overdosing on prescribed Vicodin.  A.T. 17.  She was released after being treated for acute liver failure and suffered no further complications.  A.T. 17.

In addition to assessing her physical impairments, the ALJ evaluated Thompson's mental limitations.  A.T. 17, 18.  Dr. Ahmed El-Sokkary, a consultative psychologist, examined Thompson in May 2007 and administered intelligence tests, which indicated Thompson had extremely low intelligence or mental retardation.  A.T. 17, 18.  Dr. El-Sokkary observed that Thompson was uncooperative, had a poor fund of information, and did not put forth her best effort on a memory test.  A.T. 17, 18.  Dr. El-Sokkary diagnosed Thompson with malingering.  A.T. 17, 18.

Evaluating Thompson's testimony, the ALJ noted multiple untrue and conflicting statements that cut against her credibility.  A.T. 18.  Among them, she told Dr. Rajguru that she ended her dental student training in 2001, Dr. El-Sokkary that she dropped out after her accident in 2003, and the hospital staff during her liver treatment in January 2005 that she was on vacation from school.  A.T. 18.  Thompson told Dr. Rajguru she was hospitalized for end-stage liver disease and Dr. El-Sokkary that she was on the waiting list for a transplant.  A.T. 18.  In fact, she had been removed from the transplant list prior to discharge and was expected to make a full recovery.  A.T. 18.  Thompson was back on Vicodin after three months despite advice upon discharge not to use it.  A.T. 19.   She made inconsistent statements concerning her sobriety, claiming at her hearing that she has not abused alcohol since 2001, but had two to three drinks on the weekends; telling Dr. Mally in May 2005 that she uses alcohol, but Dr. Rajguru a month later that she does not; and asking upon discharge from the hospital when she could start drinking again.  A.T. 19.  Thompson claimed to Dr. El-Sokkary that she suffered from flashbacks and rages, none of which were documented in the record.  A.T. 18.  Based on such evidence, the ALJ found her statements regarding the intensity, persistence, and limiting effects of her impairments

5

not to be credible. A.T. 19.

Presented with such evidence, the ALJ rejected Dr. Mally's July 2005 letter stating Thompson had been disabled for the prior three years. A.T. 19. The ALJ found the opinion unsupported given Dr. Mally's lack of explanation, his subsequent November 2006 exam findings, and the fact that this would place onset of Thompson's disability back to 2002, well before the April 2003 fracture. A.T. 19. The ALJ also gave little weight to Thompson's statements, instead favoring the opinions of Drs. Rajguru, Pon, and El-Sokkary and the state agency medical consultants as consistent and supported by the record. A.T. 19. The ALJ concluded that Thompson's RFC allowed for light work limited to: lifting 10 pounds frequently and 20 pounds occasionally; walking or standing for two hours in an eight-hour workday; alternating between sitting and standing every 30 minutes as needed; occasionally pushing foot controls with her left leg; and sometimes wearing an ankle brace or CAM boot. A.T. 15.

Moving to step four, the ALJ determined that Thompson had no relevant past work. At step five, the ALJ found that given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Thompson could perform. A.T. 20. The vocational expert testified that a person of her age, education, experience, and RFC would be able to work as a ticket seller and order clerk, for which respectively 1,000 and 3,600 jobs existed regionally. A.T. 20. Accordingly, although Thompson lacked the RFC to perform a full range of light work, the ALJ concluded that Thompson was not disabled under the Act. A.T. 21.

**STANDARD OF REVIEW**

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the ALJ's findings are supported by substantial evidence and not based on legal error. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as

adequate to support a conclusion. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Id. It is the ALJ's job to resolve ambiguities and conflicts in medical testimony. Andrews v. Shalala, 53 F.3d at 1039. Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)).

When the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by the court on appeal. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993). Thus, this court must consider any evidence before both the ALJ and the Appeals Council when reviewing the ALJ's decision. Id.

**ISSUE**

Thompson seeks review of the Commissioner's denial of SSI benefits, arguing that the ALJ's improper disregard of medical evidence that she must elevate her leg constitutes reversible error, and that on remand the court should order the Commissioner to award benefits.

**DISCUSSION**

In her motion for summary judgment, Thompson argues that the ALJ disregarded references in the record to her need to elevate her leg, including an instruction by her treating physician in November 2006. Thompson contends that the medical evidence does not support the ALJ's RFC determination.

The Commissioner in opposition argues that the ALJ had substantial evidence in the record to support his RFC finding. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Citing Andrews, 53 F.3d

at 1041, and Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999), the Commissioner contends that the ALJ appropriately reviewed the record and justified his conclusions. Thompson in her reply cites three Ninth Circuit cases in claiming that when the question of a claimant's disability turns on the degree of impairment, the ALJ may not disregard a treating physician's medical opinion. See Sprague v. Bowen, 812 F.2d 1226, 1230-31 (9th Cir. 1987); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

Regardless of the source, an ALJ should evaluate every medical opinion he or she receives. 20 C.F.R. § 404.1527(d). Ninth Circuit case law distinguishes amongst the weight to be accorded the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("nonexamining physicians"). 20 C.F.R. §§ 404.1527(d)(1) & (d)(2); Holohan, 246 F.3d at 1201, 1202. Generally, a treating physician's opinion is entitled to greater weight than the opinions of doctors that do not treat the claimant because treating physicians are the professionals "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ." 20 C.F.R. § 404.1527(d)(2).

Despite this deference, the treating physician's opinion does not definitively settle the issue of disability or physical impairment. Morgan, 169 F.3d at 600 (citing Magallanes, 881 F.2d at 751). The Ninth Circuit ruled in all of the cases cited by Thompson that a treating physician's opinion may be rejected so long as the ALJ provides specific, legitimate reasons based on substantial evidence in the record. See Sprague, 812 F.3d at 1231; Winans, 853 F.2d at 647; Hammock, 879 F.2d at 502; see also Thomas, 278 F.3d at 957. Opinions of examining and nonexamining physicians consistent with evidence in the record may constitute substantial evidence. Thomas, 278 F.3d at 957; Tonapetyan 242 F.3d at 1149. Additionally, in Tonapetyan, 242 F.3d at 1149, the court found an examining physician's opinion that rested on that physician's own independent evaluation of the

8

claimant to be substantial evidence.

Here, Thompson identifies two explicit references in the record to her need to elevate her leg. On June 28, 2003, Thompson was diagnosed as having a cast that was too tight and was told to "ELEVATE! your leg above the level of your heart." A.T. 143. In the second instance on November 16, 2006, Dr. Mally after examining Thompson's leg for swelling due to a contusion instructed Thompson to elevate her leg. A.T. 206. He determined that she was incapable of light or sedentary work; limited in an eight-hour workday to sitting for four hours, standing for one hour, walking for one hour, and lying down for at least two hours; able to occasionally lift five pounds; and incapable of light or sedentary work. A.T. 206. He anticipated this level of impairment would improve after three months. A.T. 206.

Drs. Pon and Rajguru both conducted separate independent examinations of Thompson. Dr. Pon, noting that Thompson wore a CAM boot and had a slow gait, concluded his orthopedic examination of her on December 17, 2004, by finding that Thompson was capable of light work. A.T. 161-63. Dr. Rajguru examined Thompson on March 29, 2005. A.T. 178. He determined that Thompson was capable of light work despite observing her unsteady gait and moderate limp. A.T. 178-80. Neither noted any need for Thompson to elevate her leg.

Two state agency medical consultants proffered similar findings as Drs. Pon and Rajguru. Dr. Ida Newton in an April 7, 2005, RFC assessment determined that Thompson was capable of standing or walking for at least two hours and sitting for six hours in an eight-hour workday. A.T. 182. In a subsequent review in June 2005, Dr. J. Tysell affirmed Dr. Newton's prior RFC decision. A.T. 196. Though they did not conduct independent evaluations, their findings support those of the examining physicians and are consistent with the evidence in the record.

The ALJ provided numerous specific facts from the record consistent with the examining physician's opinions when he determined Thompson's RFC. A.T. 15-20. He

found Thompson's testimony about the extent of her impairments lacked credibility. A.T. 19. The ALJ gave significant weight to the examining physicians' and agency consultants' opinions as consistent and well-supported by the evidence. A.T. 19. He reasoned that "except for possibly three months following the contusion, Dr. Mally could not rule out all work." A.T. 19.

As examining physicians conducting independent examinations, Drs. Pon's and Rajguru's opinions constitute substantial evidence in the record. Each opinion represents a specific and legitimate reason for the ALJ to reject Dr. Mally's November 2006 assessment. See Tonapetyan, 242 F.3d at 1149 (finding that the opinion of an examining physician served as a specific and legitimate reason to reject the treating physician's opinion). To the extent there is a conflict between Dr. Mally's assessment and that of the examining physicians, it is the ALJ's job to resolve such ambiguities and the court must uphold an ALJ's decision that is based on substantial evidence. See Andrews, 53 F.3d at 1039; Sandgathe, 108 F.3d at 980.

Thompson cites various district court cases acknowledging that whether a claimant must elevate her leg impacts the claimant's disability status. See Bynum v. Apfel, No. 01-2331 GV, 2001 WL 1906274, at *9 (W.D. Tenn. Sept. 17, 2001); Kitzke v. Astrue, No. CIV.A. 07CV01345WYD, 2008 WL 4079297, at *5 (D. Colo. Aug. 21, 2008) (finding the ALJ ignored evidence in the record supporting claimant's need to elevate her leg and so lacked substantial evidence to reject this limitation); Walker v. Barnhart, No. 04-2009-CM, 2005 WL 4708220, at *9 (D. Kan. Sept. 7, 2005) (dealing with the ALJ's credibility assessment of the claimant). Thompson considers it "curious" that the ALJ would question the vocational expert about the work impact of a person required to elevate her leg, but then fail to mention this aspect in his RFC assessment.

Here, the Commissioner does not dispute that the need to elevate one's leg would impact disability status. During questioning by the ALJ, the vocational expert testified that a person required to elevate her leg would be precluded from all work. A.T. 254-55. The

ALJ's line of questioning suggests that he recognized elevating one's leg would significantly impact work ability. It indicates the ALJ fully explored the evidence rather than dismissing it out of hand as Thompson seems to suggest. The issue in this case is not whether such a requirement impacts work ability, but whether the ALJ determined that Thompson was not limited by such a requirement.

Thompson argues that the ALJ should have recontacted Dr. Mally if he was uncertain as to the need for Thompson to elevate her leg, citing McGuinness v. Apfel, No. 00 C 3452, 2000 WL 1785532, at *7 (N.D. Ill. Dec. 5, 2000). In McGuinness, the ALJ ignored evidence supporting the need for the claimant to elevate her leg. 2000 WL 1785532, at *7. There was no evidence that the claimant's reason for elevating her leg had improved after she was released from hospital. Id. Here, the ALJ similarly did not note evidence in the record substantiating Thompson's need to elevate her leg despite her testimony to that effect and the evidence in the record identified by Thompson.

There was, however, ample evidence to find that Thompson's condition had improved subsequent to the June 2003 instruction. Notably, the hospital's instruction was related to a diagnosis that Thompson's cast was too tight, but the cast was removed by May 2004. A.T. 119, 143. X-rays from May 2004 showed Thompson's initial fractures healed and early healing of the second break. A.T. 119. All fractures had healed by March 2005. A.T. 193. Also, none of the examining doctors or medical consultants indicated that Thompson needed to elevate her leg. Drs. Pon, Rajguru, Newton and Tysell each made their assessment well after Thompson's alleged onset date, during the period from December 2004 to June 2005. Continuing care notes from Dr. Mally's office spanning from March 2005 through July 2006 indicate Thompson's varying level of exercise, including walking and running. A.T. 192, 194, 211-22. Dr. Mally qualified his subsequent assessment of Thompson's inability to work as having an onset date of November 7, 2006, and likely to last three months. A.T. 205. Based on the record, his extensive consideration of Thompson's credibility, and his reliance on the examining and nonexamining physicians'

opinions, the ALJ could be sufficiently certain that Thompson was not required to elevate her leg. The ALJ had no need to again contact Dr. Mally.

The court rejects Thompson's argument that the ALJ disregarded evidence that Thompson must elevate her leg and affirms the Commissioner's decision. Thompson maintains the burden under Andrews, 52 F.3d at 1040, to show a severe impairment. The record contains substantial evidence supporting the ALJ's rational interpretation that Thompson was not required to elevate her leg and hence was capable of limited work.

Even if the ALJ failed to give appropriate weight to the treating physician's opinion as contradicting that of the examining physicians, any error would be harmless. The above analysis assumed as Thompson asserts that Dr. Mally's opinion and that of the examining physician's conflicted. As a practical matter, however, these opinions do not necessarily conflict. Dr. Mally identified the onset date of Thompson's inability to work as November 7, 2006. This does not contradict the opinions of Drs. Pon and Rajguru, which were made in 2004 and 2005, respectively. Additionally, there is no affirmative evidence in the record that Thompson needed to elevate her leg from June 2003 through November 2006 other than Thompson's own assertions. The record indicates that Thompson's condition had improved after June 2003 and she could work in such positions as a ticket seller or order clerk. Thus, any improper disregard by the ALJ of the treating physician's opinion would result in harmless error. See Burch, 400 F.3d at 679.

Because the Commissioner's decision is affirmed, the court need not address Thompson's request for immediate payment upon remand.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the ALJ's denial of benefits, DENIES Thompson's motion for summary judgment, and GRANTS the Commissioner's cross-motion for summary judgement. The ALJ provided specific and legitimate reasons based on substantial evidence for disregarding Thompson's alleged need to elevate her leg. In particular, the ALJ resolved any ambiguities on the basis of expert opinions from two

12

1 examining physicians that conducted independent examinations. Any failure by the ALJ to
2 provide the required reasons would otherwise result in harmless error.
3  This order fully adjudicates the motions listed at numbers 16 and 20 of the clerk's
4 docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 26, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge